Robert S Simon
Attorney at Law
OSB 90120/ WSB 20382/CASB 187823
Post Office Box 6059 Portland Oregon 97228-6059
(503)-417-8766
Robert@RSSimonlaw.com

CLERK US BANKRUPTCY COURT

'04 APR -2 P1 :20

LODGED_____REC'D___6__
PAID_____DOCKETED_____

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>AVALON HOTEL PARTNERS LLC,<br><br>Debtor. | Case No.303-40414-rld11 |
| ABCO LEASING, INC,<br><br>Plaintiff,<br><br>v.<br><br>ROOMSTER, INC, an Oregon corporation and A. PAUL BRENNEKE;<br><br>Defendants. | Adversary Proceeding<br><br>No. 04-3122 rld<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION** |

Pursuant to 28 USC § 1452(a) and Rule 9027(a) of the Federal Rules of Bankruptcy Procedure, A. Paul Brenneke, hereby removes, and gives notice of removal of, Multnomah County Circuit Court Case No. 0402-02092 (ABCO Leasing v. Roomster et al.,) (the "Civil Action") to the United States Bankruptcy Court for the District of Oregon.

    1. <u>Basis for Removal</u>.  Pursuant to 28 USC § 1334(b), the United States Bankruptcy Court for the District of Oregon has jurisdiction of the Civil Action because

the Civil Action relates to Bankruptcy Case No. 303-40414-rld11 (the "Bankruptcy Case").

    2. <u>Related Proceeding</u>. Upon removal, the proceeding is a related proceeding pursuant to 28 USC § 157(b)(2)(A), (B) and (O). The claims arise from the personal guarantee of Brenneke for a lease of internet and entertainment equipment in use by the debtor and in the debtor's custody and control.

    3. <u>Attached Pleadings</u>. Incorporate by reference the pleadings attached to the Removal Notice of the Debtor.

DATED this April 2, 2004

By _____

Robert S Simon OSB 90120

Attorneys for Brenneke

FEB 26 2004

I certify that the within is a true copy of the original of said document.

By _____
Of Attorneys for _____

RECEIVED MAR 0 1 2004

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | | |
|---|---|---|
| ABCO LEASING, INC., | ) | Case No. **0402-02092** |
| Plaintiff, | ) | COMPLAINT |
| vs. | ) | (Breach of Contract and Breach of Guaranty) |
| ROOMSTER, INC., an Oregon corporation, and A. PAUL BRENNEKE, | ) | |
| Defendants. | ) | |

For its Complaint against Roomster, Inc., an Oregon Corporation, ("Roomster") and A. Paul Brenneke ("Brenneke"), ABCO Leasing, Inc., a Washington corporation ("ABCO") alleges as follows:

**GENERAL FACTUAL ALLEGATION**

1.

Roomster is an Oregon Corporation having its principal place of business at 1881 SW Naito Pkwy., Suite 100, Portland, Oregon, 97201.

2.

On or about August 13, 2001, Roomster entered into an Equipment Lease Agreement with ABCO (the "Agreement"). A true and correct copy of the Agreement is attached to this Complaint as Exhibit A.

3.

Pursuant to the terms of the Agreement, ABCO leased certain Video-On-Demand equipment to Roomster as lessee (the "Equipment"). A detailed description of the Equipment is set forth in the Agreement.

PAGE 1 - COMPLAINT

FOSTER PEPPER TOOZE LLP
601 S.W. SECOND AVENUE, SUITE 1800
PORTLAND, OREGON 97204-3171
503-221-0607

30077469.01

4.

In exchange for receipt and use of the Equipment, Roomster promised to **pay** ABCO $1,522.35 per month for **48** months (the "Monthly Payments").

5.

Pursuant to Section 20 of the Agreement, Roomster's failure to make any of the Monthly Payments is an event of default and a breach of the Agreement ("Default").

6.

Pursuant to Section 21 of the Agreement, upon the occurrence of an event of Default, ABCO is entitled to exercise all rights and remedies set forth in the Agreement in addition to all rights and remedies available to ABCO at law and in equity.

7.

Pursuant to Section 25 of the Agreement, in the event of Roomster's Default, Roomster promised to pay all of ABCO's attorney fees, costs, and expenses incurred by ABCO in enforcing the terms of the Agreement.

8.

On or about August 10, 2001, A. Paul Brenneke ("Brenneke"), an Oregon resident, entered into a continuing guaranty agreement with **ABCO** to secure Roomster's obligations pursuant to the Agreement (the "Guaranty"). A true and correct copy of the Guaranty is attached to this Complaint as Exhibit B.

9.

Pursuant to the terms of the Guaranty, Brenneke promised to fully pay all amounts that Roomster owed to ABCO in the event that Roomster failed, refused, or was unable to make its Monthly Payments or otherwise failed to honor its obligations pursuant to the Agreement.

FOSTER PEPPER TOOZE LLP
601 S.W. SECOND AVENUE, SUITE 1800
PORTLAND, OREGON 97204-3171
503-221-0607

30077469.01

1       10.

2       Roomster has failed to timely make its Monthly Payment for the month of November
3       2003 and each and every month thereafter. Roomster's failure to timely make those Monthly
4       Payments is an event of Default under the Agreement.

5       11.

6       On or about January 30, 2004, ABCO sent notice of Default to Roomster (the
7       "Default Notice"). The Default Notice informed Roomster that it had breached its
8       obligations to ABCO pursuant to the Agreement and demanded that Roomster pay
9       $32,358.06, which represented the accelerated balance owing pursuant to Section 21 of the
10      Agreement, together with interest and late fees, to ABCO within 10 days. Roomster made no
11      response.

12      12.

13      On or about January 30, 2004, and February 5, 2004, ABCO sent the Default Notice
14      to Brenneke and demanded that Brenneke honor his obligations to ABCO pursuant to the
15      Guaranty. ABCO demanded that Brenneke pay all amounts that Roomster owed to ABCO.
16      Brenneke made no response to ABCO's demand.

**FIRST CLAIM FOR RELIEF**
**Against Roomster**

(Breach of Contract)

20      13.

21      ABCO realleges Paragraphs 1-12.

22      14.

23      Roomster has breached the Agreement by failing to timely make its Monthly
24      Payments to ABCO.

FOSTER PEPPER TOOZE LLP
601 S.W. SECOND AVENUE, SUITE 1800
PORTLAND, OREGON 97204-3171
503-221-0607

30077469.01

| | |
|---|---|
| 1 | 15. |
| 2 | ABCO has performed all its obligations pursuant to the Agreement. |
| 3 | 16. |
| 4 | As a direct and proximate result of Roomster's breach, ABCO has been damaged in |
| 5 | an amount to be proven at trial but not less than $32,358.06, together with interest at 12 |
| 6 | percent per annum accruing from January 8, 2004, costs, disbursements, and ABCO's |
| 7 | reasonable attorney fees. |

**SECOND CLAIM FOR RELIEF**
**Against Brenneke**

(Breach of Guaranty)

17.

ABCO reallges paragraphs 1-12.

**18.**

Pursuant to the Guaranty, Brenneke is liable to ABCO for all amounts that Roomster owes and has failed to pay to **ABCO**.

19.

Despite demand and receipt of the Default Notice, Brenneke has failed to pay ABCO any of the amounts Brenneke guaranteed on behalf of Roomster.

20.

Brenneke's failure to pay such amounts to ABCO is a breach of the Guaranty.

21.

Pursuant to Section 10 of the Guaranty, ABCO is entitled to recover its reasonable attorney fees and cost incurred herein.

PAGE 4 - COMPLAINT

FOSTER PEPPER TOOZE LLP
601 S.W. SECOND AVENUE, SUITE 1800
PORTLAND, OREGON 97204-3171
503-221-0607

30077469.01

Case 04-03122-rld    Doc 1    Filed 04/02/04

1                                        22.

2          As a direct and proximate result of Brenneke's breach, ABCO has been damaged in

3   an amount to be proven at trial but not less than $32,358.06, together with interest at 12

4   percent per annum accruing from January 8, 2004, costs, disbursements, and ABCO's

5   reasonable attorney fees.

6          WHEREFORE, ABCO respectfully asks the Court to order the following relief:

7          1.     For judgment against Roomster and in favor of ABCO for $32,358.06,

8   together with interest at 12 percent per annum accruing from January 8, 2004, and ABCO's

9   costs, disbursements, and reasonable attorney fees;

10         2.     For judgment against Brenneke and in favor of ABCO for $32,358.06,

11  together with interest at 12 percent per annum accruing from January 8, 2004, and ABCO's

12  costs, disbursements, and reasonable attorney fees; and

13         3.     For such other and further relief as the Court deems just and appropriate.

14         DATED this 26th day of February, 2004.

15                                              FOSTER PEPPER TOOZE LLP

16

17

                                                Paul B. George, OSB #99009
18                                              Jeffry S. Garrett, OSB #00262
                                                Attorneys for Plaintiff
19

20

21

22

23

24

25

26

PAGE 5 -   COMPLAINT

FOSTER PEPPER TOOZE LLP
601 S.W. SECOND AVENUE, SUITE 1800
PORTLAND, OREGON 97204-3171
503-221-0607

30077469.01



For All You ...asing Needs

22232 - 17" Ave. SE
Suite 204
Bothell, WA 98021

Lease No. 7349-1

(425) 806-4645
(800) 995-1897
FAX: (425) 806-1813

# CONTINUING GUARANTY

For valuable consideration, the receipt and adequacy of which are hereby acknowledged, and to induce ABCO LEASING, INC. ("Lessor") to lease equipment or extend credit from time to time to ___Roornster, Inc.___ ("Lessee"), which Lessor would not do without this Continuing Guaranty, each of the undersigned (a 'Guarantor") hereby absolutely and unconditionally guarantees the full and punctual payment and performance of all lease and other obligations of the Lessee to Lessor, now existing or subsequently incurred (with or without further notice to Guarantor) at any time prior to Lessor's actual receipt of written notice from Guarantor terminating this Continuing Guaranty ("Guaranteed Obligations").

Any termination of this Continuing Guaranty shall be effective only as to obligations of Lessee to Lessor, if any, that are incurred after actual receipt of such notice; it shall not affect obligations, whether due or to become due, that were incurred prior to actual receipt of such notice.

Without limiting the generality of the foregoing, each Guarantor also agrees:

1. Obligations Guaranteed. For purposes of this Continuing Guaranty, the term 'Guaranteed Obligations" is used in its most comprehensive sense and include: (a) all monetary and non-monetary obligations of the Lessee to Lessor, including without limitation all voluntary or involuntary indebtedness, advances, debts and other liabilities of the Lessee to Lessor which are made or incurred prior to, at the time of, or after the execution of this Continuing Guaranty: (b) all obligations, whether due or to become due, absolute or contingent, liquidated or unliquidated, disputed or undisputed, determined or undetermined, and whether the Lessee may be liable individually or jointly with others; and (c) any obligations which are or may have become barred by any statute of limitations or which are or may become otherwise uncollectible by Lessor from Lessee.

2. **Performance by** Guarantor Upon Default. If the Lessee fails fully and punctually to pay or perform any Guaranteed Obligation, each Guarantor jointly and severally agrees upon demand to pay or perform the delinquent obligation and to pay all damages that arise as a consequence of the Lessee's nonpayment or nonperformance thereof.

3. Authorized Changes in **Lease.** Without notice or demand, and without affecting the liability of any Guarantor under this Continuing Guaranty, each Guarantor authorizes Lessor from time to time to: (a) renew, extend, accelerate or otherwise change the time for payment or other terms of any Guaranteed Obligation; (b) take, hold, release, exchange, enforce, apply or waive any security for the payment of any Guaranteed Obligation or this Continuing Guaranty; (c) release or substitute any other Guarantor; (d) substitute, eliminate, add or repossess any leased equipment or other property covered by an equipment lease or other agreement between Lessor and Lessee; **(e)** terminate any equipment lease or other agreement between Lessor and Lessee; or (f) assign all or any portion of the Lessor's interest in this Continuing Guaranty or any equipment lease or other agreement between Lessor and Lessee.

4. Joint **and** Several Obligations. The obligations of each Guarantor under this Continuing Guaranty are joint, several and independent of the obligations of the Lessee to Lessor. Accordingly, Lessor may prosecute a separate action against each Guarantor without joining or maintaining any action against the Lessee or any other Guarantor.

5. Waivers. To the fullest extent allowed by law, each Guarantor waives: (a) the benefit of any statute of limitations; (b) any right to require Lessor to proceed against the Lessee or any other Guarantor, to exhaust or apply any available security, or to pursue any other available remedy; (c) the benefit of any defense or discharge of the Lessee's liability to Lessor arising out of bankruptcy, insolvency or similar laws affecting the rights of creditors generally; (d) any right of subrogation to the Lessor's rights until all obligations of the Lessee to Lessor are fully paid or performed and, in the event Lessee becomes involved in a proceeding under the Federal Bankruptcy Code, until all obligations of Lessee to all of Lessee's creditors are fully paid or performed; and (e) all presentments, demands for performance, protests and notices of any kind, including without limitation notice of the acceptance of this Continuing Guaranty, notice of the creation, existence or status of any Guaranteed Obligation and notice of default, nonperformance, protest, dishonor or acceleration of any Guaranteed Obligations.

IN WITNESS WHEREOF, each undersigned Guarantor has executed this Continuing Guaranty this X /6 day of
X August , 20 X01 .

ACCEPTED;
ABCO LEASING, INC.
BY: _____

X N/A
John R. Barrows

X _____
A. Paul Brenneke

EXHIBIT B
PAGE 1 OF 2

The Terms and Conditions on the reverse side
are a part of this Continuing Guaranty

reverse page of Continuing Guaranty

6. Setoff. In addition to all liens upon, and rights of setoff against, the monies, securities, or other property of the Guarantor available to Lessor by law, the Guarantor grants to Lessor a lien upon and right of setoff against all monies, securities or other property of the Guarantor now or at any future time in the possession of or on deposit with Lessor, whether held in a general or special account of deposit or for safekeeping or otherwise. Every such lien or right of setoff may be exercised without demand or notice to the Guarantor. No lien or right of setoff shall be deemed to have been waived by any action or conduct on the part of Lessor, or by any neglect to exercise such right of setoff or to enforce such lien, or by any delay in doing so, Every right of setoff and lien shall continue in full force and effect until such right of setoff or lien is specifically waived or released by an instrument in writing executed by Lessor.

7. Subordination of Debts. Each Guarantor agrees that any indebtedness of the Lessee to the Guarantor is hereby subordinated to the Guaranteed Obligations of the Lessee to Lessor. At the request of Lessor, the Guarantor shall collect, enforce, receive and hold any payments from Lessee as trustee for Lessor and remit them to Lessor for application to the Guaranteed Obligations, without reducing or affecting in any manner the liability of the Guarantor under the other provisions of this Continuing Guaranty.

8. Survival of Guaranty. The provisions of this Continuing Guaranty shall survive the return, repossession, release, sale or other disposition of any leased equipment or property held as security and the expiration or early termination of any equipment lease or other agreement evidencing Guaranteed Obligations. Moreover, if Lessor is required at any time and for any reason to return all or any part of any payment made or property transferred to Lessor for application to any of Lessee's obligations, Guarantor shall be liable to Lessor for the full amount so returned notwithstanding expiration or other termination of this Continuing Guaranty, any equipment lease, or any other agreement evidencing any Guaranteed Obligations.

9. Authority of Lessee. The Guarantor acknowledges that if the Lessee is a corporation or partnership, it is not necessary for Lessor to inquire into the powers of the Lessee or the authority of its officers, directors, partners, or agents acting or purporting to act on its behalf.

10. Attorney Fees and Costs. The Guarantor agrees to pay reasonable attorney fees and other expenses which Lessor incurs in enforcing this Continuing Guaranty.

11. Responsibility for Information. Each Guarantor assumes responsibility for being and keeping informed of the financial condition of the Lessee and of all other circumstances bearing upon the existence, status and risk of nonpayment or nonperformance of the Guaranteed Obligations.

12. Changes in Lessee. This Continuing Guaranty shall not be affected by: (a) the death, dissolution or disability of any Guarantor or Lessee; or (b) any change in the name, objects, capital structure, or ownership of the Lessee. Notwithstanding any such event, this Continuing Guaranty shall continue to apply to all Guaranteed Obligations, whether theretofore or thereafter incurred, and the word "Lessee" shall include all successors and assigns of the Lessee.

13. Statement of Account. Each Guarantor shall be bound by any account settled between Lessor and Lessee, and if no such account has been settled immediately before demand of payment under this Continuing Guaranty, any account stated by Lessor shall be accepted by the Guarantor as conclusive evidence of the amount due and unpaid by Lessee to Lessor at the date of such statement of account.

14. Signatures. This Continuing Guaranty shall be binding upon each Guarantor who has signed it, even though another proposed Guarantor has not signed it, and in the absence of an agreement to the contrary in writing and duly executed by Lessor, possession of this instrument by Lessor shall be conclusive evidence that this instrument was not delivered into escrow or pursuant to any agreement that it should not be effective until fulfillment of any conditions precedent or subsequent.

15. Community and Separate Property. To the maximum extent permitted by law, any married person who signs this Continuing Guaranty hereby expressly agrees that recourse may be had against his or her separate property and any community property for all obligations under this Continuing Guaranty.

16. Severability. If any provision in this Continuing Guaranty shall be declared unenforceable, the unenforceable provision shall be disregarded and all other provisions in this Continuing Guaranty shall continue in full force.

17. Miscellaneous Provisions. This instrument : (a) constitutes the entire understanding of the Guarantor with respect to the matters covered; (b) supersedes all previous or different understandings; (c) may only be amended with the written approval of a duly authorized representative of Lessor; (d) shall be binding upon the heirs, executors, administrators, legal representatives, successors and assigns of the Guarantor; and (e) shall be governed by the laws of the State of Washington. At Lessor's election, venue of any action to enforce, interpret or recover damages for breach of this Continuing Guaranty may be properly laid in King or Snohomish County, Washington, and each Guarantor hereby submits and consents to the personal jurisdiction and venue of either court.

F:\USERS\WBC\GUARANTY\PracticeGuar.doc

EXHIBIT B
PAGE 2 OF 2



For All You...asing Needs      Lease No. 7349-1

22232 – 17th Ave. SE
Suite 204
Bothell, WA 98021

(425) 806-4645
(800) 995-1897
FAX: (425) 806-1813

## EQUIPMENT LEASE

**NAME AND ADDRESS OF LESSEE**
Roomster, Inc.
1020 SW 10th Avenue
Portland, OR 97205

**SUPPLIER OF PROPERTY (COMPLETE ADDRESS)**
GCT-Allwell
14321 E. Don Julian Road
Industry, CA 91746

**PROPERTY LEASED:**

(110) STBVOD3036N Video On Demand (VOD) Client Devices, to include:
GXM-233 MHz MMX CPU, 168 pin 32MB SDRAM, Realtek 8139 100TLAN, Power Cord, S-Video Cable, RCA Cable, Sigma EM 8400 MPEG-2 Card, VBI-200 TV Tuner w/RF-In/Out Modulator, Wireless Remote (Forward AZ158F-00 IC), 128MB DOM, IR Silk Screen

**LOCATION OF PROPERTY: STREET ADDRESS** 4630 SW Macadam Avenue
**CITY** Portland   **COUNTY** Multnomah   **STATE** OR   **ZIP** 97201

| Amount of Each Rental Payment (Plus Sales Tax if applicable) | Rental Commencement Date | Rental Periods Will Be | No. of Rental Payments |
|---|---|---|---|
| $1,522.35 | 09-01-01 | Monthly | 48 |

**COMMITMENT FEE:**

| Advance Payment(s) | Security Deposit | Processing Fee | Total Payable In Advance |
|---|---|---|---|
| $1,522.35 | $1,522.35 | $350.00 - | $3,394.70 |

ADDITIONAL TERMS: THIS LEASE IS NONCANCELABLE

1. **Agreement to Lease.** ABCO Leasing, Inc. ("Lessor") agrees to lease to the undersigned lessee ("Lessee"), and the Lessee agrees to lease from the Lessor, the personal property described above ("Property") on the terms specified in this equipment lease ("Lease").

2. **Entire Agreement.** This Lease (a) represents the entire agreement between Lessee and Lessor with respect to the subject matter covered, (b) supersedes any prior understandings with respect to that subject matter and (c) may only be emended in a writing duly executed by both Lessee and Lessor.

3. **Agency Disclaimer.** NO ONE, EXCEPT A CORPORATE OFFICER OF LESSOR, HAS ANY AUTHORITY TO APPROVE OR MODIFY THIS LEASE, OR TO ACT OR MAKE ANY REPRESENTATIONS ON BEHALF OF LESSOR.

4. **Lessee Representations.** To induce Lessor to enter into this Lease, Lessee represents or acknowledges that: (e) Lessee has selected the Property and its supplier(s) ("Supplier") without reliance on any advice from Lessor; (b) Lessor does not select, manufacture or supply the Property; (c) Lessor has not previously acquired the Property; (d) Lessee has approved the purchase order which will evidence Lessor's purchase of the Property; (e) Lessee is acquiring the Property for its own use and not for sublease or other disposition in the ordinary course of business; and (f) THIS LEASE IS MADE FOR BUSINESS PURPOSES AND NOT PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

5. **Warranty Disclaimers, Claim Limitations** and **Liquidated Damages.** LESSOR LEASES THE PROPERTY TO LESSEE 'AS IS" WITHOUT ANY WARRANTIES, EXPRESS OR IMPLIED, AS TO ANY CONDITION, QUALITY, SPECIFICATION, CAPACITY, COMPLIANCE WITH LAW, MATERIALS OR WORKMANSHIP. AND LESSOR EXPRESSLY DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE. AS BETWEEN LESSEE AND LESSOR, LESSEE ASSUMES THE RISK OF ANY PROBLEM WITH THE PROPERTY AND AGREES THAT: (a) NO SUCH PROBLEM SHALL RELIEVE LESSEE FROM THE OBLIGATION TO PAY RENT OR OTHERWISE PERFORM THIS LEASE, AND (b) LESSOR SHALL NOT BE LIABLE TO LESSEE FOR ANY DIRECT, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON CONTRACT, NEGLIGENCE, STRICT LIABILITY, PRODUCT LIABILITY OR ANY OTHER THEORY, ON ACCOUNT OF ANY PROBLEM WITH THE PROPERTY WHATSOEVER. IF LESSEE IS NOT IN DEFAULT HEREUNDER. LESSOR AGREES TO ASSIGN TO LESSEE ANY WARRANTY CLAIMS OF LESSOR AGAINST THE SUPPLIER AND MANUFACTURER SO THAT LESSEE MAY ENFORCE SUCH CLAIMS AT LESSEE'S SOLE EXPENSE. LESSEE ALSO AGREES THAT THE **LIQUIDATED DAMAGE PROVISIONS** IN PARAGRAPHS 13 AND 21 OF THIS LEASE PROVIDE A REASONABLE ESTIMATION OF THE DAMAGES CAUSED BY A CASUALTY LOSS OF THE PROPERTY OR LESSEE'S BREACH OF THIS LEASE. LESSEE ACKNOWLEDGES THAT THE TERMS OF THIS PARAGRAPH HAVE BEEN EXPLICITLY NEGOTIATED AND THAT LESSOR WOULD NOT ENTER INTO THIS LEASE WITHOUT THE WARRANTY DISCLAIMERS AND OTHER TERMS OF THIS PARAGRAPH.

LESSEE'S INITIALS: X _____

By execution hereof, the signer hereby certifies that he or she has read this Lease INCLUDING THE REVERSE SIDE HEREOF, and that he or she is duly authorized to execute this Lease on behalf of the Lessee.

LESSOR:
ABCO LEASING, INC.
By: _____
Its: V.P.
Date: 8-13-01

LESSEE:
Roomster, Inc.
By/Title: X _____ John R. Barrows / President
By/Title: _____
Date: X 8-8-01

The Terms and Conditions on the other side are a part of this Lease Agreement

EXHIBIT __A__
PAGE __1__ OF __2__

Case 04-03122-rld    Doc 1    Filed 04/02/04

6. **Term.** The term of this Lease shall begin on the date it is accepted by Lessor and continue for the number of "rental periods" after the "rental commencement date"; provided that, unless otherwise agreed, if the Property is not delivered to Lessee within ninety days after such acceptance, either party may terminate this Lease on five days' notice to the other party; and provided further that if such a termination occurs while Lessor has an outstanding purchase order for the Property, Lessee shall assume and indemnify Lessor against all obligations relating to such purchase order.

7. **Delivery.** If the Property is delivered in good condition, Lessee shall promptly sign and return Lessor's standard form Property Acceptance Certificate, the receipt of which Lessee hereby acknowledges.

8. **Rent Commencement.** The "rental commencement date" shall be: (a) the first day of the calendar month during which Lessee signs the Property Acceptance Certificate if that Certificate is signed on or before the 15th day of the month; or (b) the first day of the next calendar month if Lessee signs the Property Acceptance Certificate on or after the 16th day of a calendar month. Lessee authorizes Lessor to fill in the proper rental commencement date on the front side of this Lease after the Lessee signs such Certificate. Lessee also authorizes Lessor to complete or correct the serial numbers or other description of the Property after it has been delivered.

9. **Rent and Processing Charges.** Lessee shall pay Lessor the "amount of each rental payment" on or before the rental commencement date and on or before the first day of each rental period thereafter for the "number of rental payments" shown in the table on the front of this Lease. All rental payments shall be payable in full without deduction or setoff. Lessee shall also pay or reimburse Lessor on demand for all filing fees, recording expenses and other reasonable Lease processing charges.

10. **Use and Maintenance.** Lessee shall use the Property carefully and comply with all laws relating to its possession, use or maintenance. At Lessee's expense, Lessee shall also keep and maintain the Property in good working condition, order and repair at the "location" set forth on the front side unless Lessor consents in writing to another location.

11. **Surrender.** Upon expiration of the Lease term, Lessee agrees to redeliver the Property, carefully crated for shipment and freight prepaid, to Lessor at Lessor's place of business or such other reasonable place as Lessor may designate, in like condition as when delivered to Lessee except for ordinary wear and tear. In the event the Lessee fails to redeliver the Property when due, and without limiting any other remedies available to Lessor, Lessee shall also be liable to Lessor for an amount equal to 150% of the last scheduled rental payment for each month, or portion thereof, that Lessee retains the Property beyond the term of the Lease. **WARNING: FAILURE TO PROMPTLY RETURN THE LEASED PROPERTY MAY RESULT IN CRIMINAL PROSECUTION.**

12. **Alteration, Liens, Taxes.** Lessee shall: (a) not permit alteration of the Property without Lessor's prior written consent (and any alteration shall belong to Lessor); (b) keep the Property free and clear of all levies, liens and encumbrances; and (c) pay all charges and taxes (local, state and federal including without limitation, personal property taxes) which may now or hereafter be imposed upon the ownership, leasing, rental, sale, purchase, possession or use of the Property excluding only federal and state income taxes on the Lessor's net income.

13. **Casualty Loss.** Lessee shall bear the entire risk of loss, theft, damage or destruction of the Property from any cause whatsoever (a "Casualty Loss"), and agrees that no Casualty Loss, whether before or after delivery of the Property, shall relieve Lessee of its obligation to pay rent or otherwise perform this Lease. In the event of a Casualty Loss, Lessee shall, at the Lessor's option and Lessee's sole expense, immediately: (a) repair or replace the Property with identical property in good condition with clear title thereto in Lessor; or (b) pay to Lessor the sum of the following amounts as LIQUIDATED DAMAGES: (i) total rent and other payments then past due under this Lease; plus (ii) all future rent and other amounts payable for the balance of the Lease term; plus (iii) Lessor's "estimated residual value" (as hereinafter defined), with all future rent and other obligations, including the estimated residual value discounted at the time of payment to present value by an annual factor of six percent. As used in this Lease, the term, "Estimated Residual Value" shall mean the Lessor's good faith estimate of the fair wholesale value of the Property at the normal expiration of the Lease term, assuming that it were returned to Lessor in like condition as when delivered to Lessee except for ordinary wear and tear. Upon Lessor's receipt of the Casualty Loss payment, Lessor agrees that its entire interest in said Property shall become the property of Lessee and Lessee's insurer (as their interests may appear) in its then condition, AS IS, without warranty from Lessor, express or implied.

14. **Insurance.** At Lessee's own expense, Lessee shall procure and maintain in force throughout the Lease term and until the Property is returned to Lessor: (a) primary general liability insurance, including bodily injury and property damage protecting the interest of Lessor and Lessee with limits of not less than $500,000 naming Lessor as additional insured; and (b) primary all risk physical damage insurance, including burglary and theft, covering the replacement value of the Property and naming the Lessor as loss payee. Lessee shall furnish to Lessor satisfactory evidence of the required insurance. The proceeds of any insurance received by Lessor on account of any Casualty Loss which Lessee has paid shall be released to Lessee upon appropriate proof unless the Lessee is then in default hereunder. Such policies shall be with companies acceptable to Lessor and shall provide for at least thirty days' written notice of cancellation to Lessor. Lessor may act as attorney-in-fact for Lessee in making, adjusting, or settling any claims under any insurance policies insuring the Property.

15. **Indemnity.** LESSEE SHALL FOREVER INDEMNIFY, DEFEND AND HOLD LESSOR HARMLESS FROM ALL CLAIMS, ACTIONS, PROCEEDINGS, EXPENSES, TAXES, PENALTIES, DAMAGES, LOSSES, INJURIES, DEATHS AND LIABILITIES (INCLUDING ATTORNEY'S FEES AND COURT COSTS WHETHER OR NOT SUIT IS INSTITUTED AND AT TRIAL OR ON APPEAL) ARISING IN CONNECTION WITH THE PROPERTY, INCLUDING WITHOUT LIMITATION: (a) LESSEE'S BREACH OF THIS LEASE; (b) THE MANUFACTURE, SELECTION, ACQUISITION, DELIVERY, INSTALLATION, SERVICING, OWNERSHIP, POSSESSION, USE OR MISUSE OF THE PROPERTY; OR (c) LESSOR'S PURCHASE, TAX OR OTHER OBLIGATIONS WITH RESPECT TO THE PROPERTY IN THE EVENT LESSEE TERMINATES THIS LEASE OR REJECTS OR REVOKES ACCEPTANCE OF THE PROPERTY. This indemnity shall survive the expiration, early termination, or cancellation of the Lease.

16. **Lessor's Assignment.** Lessor may assign any or all of its rights hereunder without Lessee's consent and without assigning any of the Lessor's obligations. In that event, Lessee agrees not to assert against the assignee any claim or defense Lessee may have against Lessor.

17. **Lessee's Assignment.** Without Lessor's prior written consent, Lessee agrees not to: (a) assign, encumber, or in anyway dispose of any interest in this Lease or the Property, or (b) sublet or permit the Property to be used by anyone other than agents or employees of Lessee. If Lessee is a corporation, partnership or similar entity, any transfer of a controlling interest in the entity either by disposition of the existing ownership interests or issuance of new ownership interests shall be deemed to constitute an indirect assignment of the Lessee's interest in the Property requiring Lessor's consent hereunder. Subject to these limitations, the rights and obligations of both parties shall bind and inure to the benefit of their respective heirs, personal representatives, successor and assigns.

18. **Late Charges and Interest.** If Lessee fails to pay when due any rent or other amount required hereunder, Lessee agrees to pay a late charge of five percent of each delinquent amount or ten dollars, whichever is greater, with interest on the delinquent amount at the lesser of twelve percent or the maximum rate allowed by law from due date until paid. If Lessor in its sole discretion elects to pay any amount required hereunder to be paid by Lessee to any third party, but which Lessee has not paid when due, Lessee shall immediately reimburse Lessor and pay Lessor the above late charge with interest on each payment by Lessor.

19. **Security Deposit.** Prior to delivery of the Property, Lessee shall deposit with Lessor the security deposit specified on the front side of this Lease. Lessor will pay no interest on the security deposit and may deposit and use the funds in its general account. If Lessee does not default hereunder, the security deposit shall be returned to Lessee at the expiration of the Lease term. If Lessee does default hereunder, Lessor may (but shall not be required) to use the security deposit to cure the default, in which case Lessee shall immediately pay Lessor the amount necessary to restore the full security deposit.

20. **Default.** Lessee shall be in default under this Lease if: (a) Lessee fails to pay when due any rent or other amount which Lessee owes Lessor; (b) Lessee fails to perform any other obligation which Lessee owes Lessor; (c) voluntary or involuntary petition is filed with respect to Lessee under the bankruptcy laws (including without limitation a petition for reorganization, arrangement or extension) or under any receivership or insolvency law; (d) Lessee is insolvent or unable to pay debts as they mature; (e) any property of Lessee is seized or levied upon by governmental proceedings; (f) Lessee dies or dissolves; (g) Lessee defaults on any other agreement it has with Lessor; (h) any of the foregoing events occur with respect to any of Lessee's guarantors; or (i) Lessor believes in good faith that the prospect for payment or performance of the Lease is impaired.

21. **Remedies.** If Lessee is in default, Lessor may: (a) enforce Lessee's obligations under the Lease, including payment of all past due amounts, or recover damages for Lessee's breach thereof; or (b) declare immediately due and recover as LIQUIDATED DAMAGES the sum of: (i) all rents and other amounts past due under the lease; (ii) the entire unpaid balance of future rent and other amounts which will become due for the balance of the Lease term; and (iii) Lessor's estimated residual value (as defined in paragraph 13 above). All accelerated future obligations, excluding sales, use, personal property and other tax obligations, but including the residual obligation, shall be discounted to present value at the time of payment or entry of judgement, whichever first occurs, by an annual factor of six percent. In addition, Lessor may enter any premises and take possession of the Property (and all additions and substitutions) without notice, demand or legal process, and without terminating Lessee's obligations under this Lease. If Lessor repossesses the Property, it may sell, re-lease or otherwise dispose of the Property in a commercially reasonable manner and apply the net proceeds realized (after deducting from the gross proceeds the total of Lessor's expenses of repossession, collection and sale, including attorney's fees, whether or not suit has been instituted) against all rent and other amounts due to Lessor from Lessee pursuant to this Lease. Lessee shall remain liable to Lessor for any deficiency. All remedies of Lessor are cumulative and may, to the extent permitted by law, be exercised concurrently or separately and the exercise of only one remedy shall not be deemed an election of remedy, preclude exercise of any other remedy, or terminate Lessee's obligations pursuant to the Lease. Time is of the essence to this Lease, and Lessee's obligations hereunder shall not be affected or excused by acceptance of any past due payment or any delay in enforcement of Lessor's rights hereunder. The LIQUIDATED DAMAGES specified in this paragraph are a fair estimation of the actual but difficult to ascertain damages which would result from a breach of the Lease and are not intended as a penalty.

22. **Early Termination.** If any Default as defined in Paragraph 20 occurs before delivery of the Property to Lessee, in addition to all other rights and remedies Lessor otherwise has by law, Lessor may at its option terminate the Lease. Any indemnification or other liabilities of Lessee to Lessor which arose before the effective date of termination shall survive the termination.

23. **Financial Reports, Inspection Rights and Financing Statements.** Lessee shall furnish such financial information as Lessor may reasonably request from time to time, including profit and loss statements and balance sheets, and all such financial information shall be true and complete as of the date and for the period indicated. Lessor shall have the right at any time during reasonable business hours to inspect the Property and observe its use. Lessee hereby appoints Lessor (and its successors and assigns) as its attorney-in-fact for purposes of executing and filing any financing statements or similar documents that Lessor deems necessary to give public notice of its interests in the Property, even though the parties acknowledge that THIS LEASE IS NOT INTENDED AS SECURITY.

24. **Ownership.** The Property is, and shall remain, personal property, owned by Lessor (even if attached to realty), and Lessee has no rights in the Property except as set forth herein. Lessor may affix notice of its ownership on the Property at any time. Lessee shall not attach the Property to realty without Lessor's consent and without obtaining an agreement (satisfactory to Lessor) from all persons having an interest in the realty waiving all interests in the Property.

25. **Enforcement Expenses.** Lessee shall pay Lessor all expenses including, (without limitation) reasonable attorney's fees whether or not suit is instituted, travel, lodging, communication, expert witness and similar costs incurred by Lessor in enforcing any of the provisions of this Lease.

26. **Notice.** All notices and consents hereunder shall be ineffective unless in writing, delivered in person or mailed by certified or registered mail, postage prepaid to the parties at their addresses on the front side, or other address as either party may notify the other in writing.

27. **General.** This Lease shall be governed by the laws of the State of Washington, and Lessee hereby submits and consents to the personal jurisdiction and venue of the Superior Court of the State of Washington for either King or Snohomish County in any suit arising with this Lease. Any controversy or claim arising out of this Lease or the breach thereof may at the option of the Lessor be settled by arbitration at Bothell or Seattle, Washington, in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. If any provision of this Lease shall be declared contrary to law, it is agreed that such provision shall be disregarded and this Lease shall continue in full force as though such provision had not been incorporated herein. If more than one Lessee is named herein, the liability of each shall be joint and several.

\\ABCO\SYS\USERS\NBC\00EquipmentLeases\7349-1\7349-1Lease.doc

EXHIBIT A
PAGE 2 OF 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON
(Portland)

In re: ) No. 303-40414rld11
)
AVALON HOTEL PARTNERS )
LLC, )
) BY: A. Paul Brenneke
Debtor. )
)
)
)
)

## CERTIFICATE OF SERVICE

I do hereby certify that I did cause to be served upon the following listed parties a true copy of:

**NOTICE OF REMOVAL OF CIVIL ACTION**

by having same served by electronic mail on this date.

**PARTIES:**

Ms. Vivienne Popperl Esq.
U.S. Trustee, District of Oregon
620 SW Main Street Rm 213
Portland OR 97205

Ms. Catherine S. Travis Esq.
Lane Powell LLP
Suite 2100, 601 SW Second Ave
Portland, OR 97204-3158
Attorneys for Debtor

Mary Jo Heston
Lane Powell LLP
1420 Fifth Ave Suite 4100
Seattle WA 98101-2338
Attorneys for Debtor

Hollis McMilan
Faliegh Wada & Witt P.C.
121 SW Morrison St. Suite 600
Portland OR 97204
Attorneys for Pacific Western
Mortgage and Investment, Portland
Avalon Hotel LLC., and PW3 Inc.,

David Foraker
Greene & Markley P.C.
1515 SW Fifth Ave Suite 600
Portland OR 97201
Attorneys for Edward Dundon and the
Dundon Company.

3–   303-40414-rld11

The Robert S Simon Law Firm,
Post Office Box 6059 Portland Oregon 97228-6059 503-417-8766

Case 04-03122-rld    Doc 1    Filed 04/02/04

Kevin Kennedy, Committee Chair
c/o Daniel W. Dickerson
Wise & Assoc PC
806 SW Broadway Suite 800
Portland OR 97205
Attorneys for Committee Chair

Mr. John Crawford
Schwabe Williamson & Wyatt PC
1600-1900 Pac West Ctr
1211 SW Fifth Ave
Portland OR 97204
Attorneys for Avalon Hotel Developer LLC

Anderson & Monson P.C.
Richard Anderson Jr., OSB 83141
Park Plaza West Suite 460
10700 SW Beaverton Hillsdale Hwy
Beaverton OR 97005
Attorneys for Plaintiff Lease Crutcher Lewis

Mr. Thomas W. Stilley
Sussman Shank LLP
Suite 1400, 1000 SW Broadway
Portland OR 97205-3089
Attorneys for CorUS Bank N.A.

Paul George OSB 99009
Jeffry Garrett OSB 00262
Foster Pepper Tooze LLP
601 SW Second Ave, Suite 1800
Portland OR 97204-3171
Attorneys for ABCO

Stephen Carroll OSB 94057
Muhlheim Boyd & Carroll
88 East Broadway
Eugene, OR 97401
Attorneys for Dynamic Finance Corp.

Garvey Schubert Barer
Mr. Keith Dubanevich OSB 97520
Ms. Celia A. Howes
Eleventh Floor
121 SW Morrison Street
Portland OR 97204-3141
Attorneys for Pacific Western Management LLC, Colorado-Avila Limited Investors, Pacific Western Realty and Development Company, Portland Lawnfield Limited Investors, California Oswego Limited Investors.

Dated this April 2, 2004

_____
Robert S Simon
OSB 90120/WSB 20382/CASB 187823
for **The Robert S Simon Law Firm**
Attorneys for Mr. A. Paul Brenneke

| B 104 (Rev. 2/92) | ADVERSARY PROCEEDING COVER SHEET (Instructions on Page 2) | | ADVERSARY PROCEEDING NUMBER (Court Use Only) 04-3122-rld |
|---|---|---|---|
| **PLAINTIFFS** ABCO LEASING INC 503-221-0607 | | **DEFENDANTS** ROOMSTER INC., AND A. PAUL BRENNEKE CLERK US BANKRUPTCY COURT '04 APR -2 P1:20 LODGED____ REC'D OB PAID____ DOCKETED____ | |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) PAUL B. GEORGE OSB 99009 FOSTER PEPPER ROZE 601 SW 2ND AVE #1800 97204 | | **ATTORNEYS** (If Known) ROBERT S SIMON FOR BRENNEKE 90120 | |

**PARTY** (Check one box only)  ☐ 1 U.S. PLAINTIFF  ☐ 2 U.S. DEFENDANT  ☐ 3 U.S. NOT A PARTY

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

BREACH OF CONTRACT

**NATURE OF SUIT**
(Check the one most appropriate box only.)

- ☒ 454 To Recover Money or Property
- ☐ 435 To Determine Validity, Priority, or Extent of a Lien or Other Interest in Property
- ☐ 458 To obtain approval for the sale of both the interest of the estate and of a co-owner in property
- ☐ 424 To object or to revoke a discharge 11 U.S.C. §727
- ☐ 455 To revoke an order of confirmation of a Chap. 11, Chap. 12, or Chap. 13 Plan
- ☐ 426 To determine the dischargeability of a debt 11 U.S.C. §523
- ☐ 434 To obtain an injunction or other equitable relief
- ☐ 457 To subordinate any allowed claim or interest except where such subordination is provided in a plan
- ☐ 456 To obtain a declaratory judgment relating to any of foregoing causes of action
- ☐ 459 To determine a claim or cause of action removed to a bankruptcy court
- ☐ 498 Other (specify)

**ORIGIN OF PROCEEDINGS** (Check one box only.)  ☐ 1 Original proceeding  ☒ 2 Removed Proceeding  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another Bankruptcy Court  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

| DEMAND | NEAREST THOUSAND $35,000 | OTHER RELIEF SOUGHT | | ☐ JURY DEMAND |
|---|---|---|---|---|

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| NAME OF DEBTOR AVALON HOTEL PARTNERS LLC | BANKRUPTCY CASE NO. 303-40414-RLD 11 | |
|---|---|---|
| DISTRICT IN WHICH CASE IS PENDING OREGON | DIVISIONAL OFFICE PORTLAND | NAME OF JUDGE DUNN |

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

**FILING FEE** (Check one box only.)  ☒ FEE ATTACHED  ☐ FEE NOT REQUIRED  ☐ FEE IS DEFERRED

| DATE 4/2/04 | PRINT NAME ROBERT S SIMON | SIGNATURE OF ATTORNEY (OR PLAINTIFF) Robert S [signature] |
|---|---|---|

APCS-B104 Page 1 of 2